## First National Bank of Davenport, Iowa, v. E. Rothschild & Brothers.

1.  QUESTION OF FACT—*Tenor of Written Instruments Introduced as Evidence.*—When written instruments are submitted. the tenor of which is not certain and which are susceptible of variant meanings, it is admissible to show by oral testimony the circumstances under which the writings were made, as well as the subsequent conduct of the parties thereunder. and the inference to be drawn from such situation and such conduct is ordinarily a question of fact to be determined by a jury.

Trespass on the Case, on promises.   Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding.   Heard in the Branch Appellate Court at the March term, 1902.   Reversed and remanded.   Opinion filed February 27, 1903.

The following correspondence having passed between the parties to this suit, there grew out of it and that done thereunder, this litigation.

"CHICAGO, July 25, 1895.
MR. BURDICK, Pres. First Nat'l Bank, Davenport, Ia.

DEAR SIR:   Referring to conversation had with you a short time ago when in the city, in which conversation you

asked us to have Isaac Rothschild re-open his account with
your bank, saying that if he did so you would extend him
at all times a credit of from $10,000 to $15,000, you said
further that you did not want us to guarantee the account,
but that you would like us to write you that if anything
should happen to him or his business, that we would see
that the First National Bank of Davenport, Iowa, did not
lose anything.   Now, while such event will never occur, we
nevertheless, according to your wishes, state to you here-
with that if you extend Isaac Rothschild a credit of from
$10,000 to $15,000 we will see that your bank is fully and
wholly protected under all circumstances.   We will, on
receipt of your reply, correspond with Isaac in regard to
re-opening an account with you.

With respect, we remain,
Yours, etc.,
E. ROTHSCHILD & BROS ,
By A. M. Rothschild, Vice-Pres."
Confidential.

"CHICAGO, July 30, 1895.
MR. A. BURDICK, First Nat'l Bank, Davenport, Iowa.

DEAR SIR : I have written Isaac in reference to the con-
versation we had, and I told him to transfer his account to
your bank.   He may not have as much to deposit now as he
will have later in the season, this being the dullest season
of the year.   In case he wants $5,000, which he likely needs
now, let him have it, as I don't want him to get it of the
other bank so long as he is going to make the change.   It
is perfectly good.   You need never fear.

Yours very truly,
A. M. ROTHSCHILD."

" CHICAGO, Sept. 11, 1895.
A. BURDICK, Esq., Pres. First Nat'l Bank, Davenport, Ia.

DEAR SIR : We have this day written to Mr. Isaac Roths-
child to call on you for a discount of $3,000 on four months'
time.   If you will kindly let him have this amount we will
consider the credit granted under conditions of our former
letter to you.

Respectfully,
E. ROTHSCHILD & BROS."

" CHICAGO, Sept. 19, 1896.
MR. A. BURDICK, Pres. First Nat'l Bank, Davenport, Iowa.

DEAR SIR : We are in receipt of a letter which Isaac
Rothschild sends us, asking him to pay the next note of
$3,000 falling due on the 23d, in response to which we

First Nat. Bank v. E. Rothschild & Brothers.

would say that it is quite impossible for him to pay this just now, he having reduced his indebtedness a short time ago. Banks here are renewing their customers' paper. While they are not making new loans, they are taking care of their present customers to this extent. I feel that at this time you should renew his paper for him, and hope you will kindly do so.

Yours respectfully,
A. M. ROTHSCHILD."

"FEBY. 17, 1897.

Mess. E. ROTHSCHILD and A. M. ROTHSCHILD, Chicago, Ills.

GENTLEMEN: Mr. Isaac Rothschild wishes to again renew his note, $4,000, which matured to-day; and upon referring to our correspondence in regard to his loan or line of loans, the idea is suggested that it would be better to have the enclosed contract, making the matter more definite and describing the notes so there can be no mistakes as to the amount of your guarantee. And I would prefer to have it in this shape, so it can be carried with the notes and not in the form of correspondence. It is the same thing to you and much more convenient for the bank. Please each sign and return one copy to me.

Yours truly,
ANTHONY BURDICK, Pres't."

"CHICAGO, February 19, 1897.

A. BURDICK, Esq., Pres. First National Bank, Davenport, Iowa.

DEAR SIR: In response to your favor of recent date, we beg to say that Mr. Rothschild, who has been confined to home for several weeks past on account of illness, has left for California, and Mr. A. M. Rothschild is at present in the East, and will not return for about two weeks. Upon his return we will bring the matter you speak of to his attention.

Yours respectfully,
A. M. ROTHSCHILD & Co.,
Secy."

"CHICAGO, 4-21-1897.

ANTHONY A. BURDICK, Esq., Pres. First National Bank, Davenport, Iowa.

DEAR SIR: In response to your favor of the 17th instant, would say that my brother, E. Rothschild, has not returned from California as yet, and in his absence I am not willing to give the firm's indorsement. When he returns I will

take the matter up with him and let you hear from me
further.                    Yours respectfully,

A. M. ROTHSCHILD."

"MAY 21, 1897.
MESS. E. ROTHSCHILD and A. M. ROTHSCHILD, Chicago.

DEAR SIRS: Note of Isaac Rothschild due to-day favor
of this bank, for $3,750.00 was protested for non-payment,
and we look to you for the payment thereof.

Yours truly,

C. A. MAST, Cr."

The plaintiff loaned to Isaac Rothschild the following
amounts, at the following dates, maturing as set forth:

1895.    August 1, $5,000, due November 4, 1895.

November 4, renewed; due February 7, 1896.

February 7, added $2,000, makes $7,000; due May 9.

May 9, paid $2,000; renewed $5,000; due August 12, 1896.

August 12, renewed; due November 14, 1896.

November 14, paid $1,000; renewed $4,000; due Feb-
ruary 18, 1897.

February 17, paid $250; renewed $3,750; due May 21,
1897.

1895.    September 12, loaned $3,000; due December 14,
1895.

December 14, renewed; due March 17, 1896.

March 17, renewed; due June 20, 1896.

June 20, renewed; due September 23, 1896.

September 23, renewed; due December 24, 1896.

December 24, renewed; due March 27, 1897.

March 27, paid $250; renewed $2,750; due June 30, 1897.

The bank·held at time of the failure of the Isaac Roths-
child of these transactions, note made February 17, 1897,
$3,750, ninety days to order of the bank, by Isaac Roths-
child. Note made March 27, 1897, $2,750, three months, to
the order of the bank, by Isaac Rothschild.

At the time of bringing suit all the bank had received
on these notes was from one Hayum, an indorser, May 28,
1897, $4,000, and from Isaac Rothschild's assignee, January
26, 1898, $1,007.50. Such sum was made up of a dividend
to Hayum of $620 on proof of his claim for $4,000, paid by
him as indorser, and $387.50 on plaintiff's claim; these divi-
dends, plaintiff received and credited to its account against
Isaac Rothschild, suing appellee for the balance.

Isaac Rothschild made an assignment to John W. Ballord; before suit the assignment had been closed, and the assignee discharged.

When the bank received the $4,000, it released Hayum. It was the custom of the First National Bank of Davenport to renew maturing paper.

Whether it renewed depended upon a good many circumstances, as to the character of the maker, financially and otherwise, and security offered, and line of credit that the party was entitled to, and other considerations.

There was a verdict finding the issue for the defendant and the following special finding:

"Did the plaintiff and its attorney, Murphy, in making the settlement with Hayum and in releasing Hayum, exercise ordinary care—that is to say, such care as ordinarily prudent persons would have exercised under similar circumstances?"

Answer:  "Yes."

ROSENTHAL, KURZ & HIRSCHL, attorneys for appellant.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

The following instruction, at defendant's request, was given to the jury:

"If the jury believe from the evidence that the plaintiff did not, on its part, *agree* to at all times give Isaac Rothschild the credit in question of from $10,000 to $15,000, so long as nothing had happened to him or his business, then the jury are instructed to find for the defendant; and the jury are further instructed that the burden of proving that the plaintiff did so agree is upon the plaintiff."

This instruction was wrong; and if for no other reason the judgment must be reversed on account of it.  However conditional the guaranty of appellee may have been, it was not conditioned that the bank should agree to at all times give Isaac Rothschild a credit of from ten to fifteen thousand dollars, so long as nothing happened to him or his business.  The question in this regard to be submitted

to the jury was, did the bank act upon the offered guaranty of appellee and did appellee have reasonable notice that it had so done.

It does not appear that any formal, specific notice was given to appellee that the bank accepted the guaranty and would act thereon, but it does sufficiently appear from the correspondence that appellee knew that the bank was acting on the guaranty.

The principal contention by appellee in support of the judgment it has obtained is, that the condition of the guaranty was that appellant should extend to Isaac Rothschild a continuous credit of from ten to fifteen thousand dollars.

Each party insists that it was entitled at the close of the evidence to a peremptory instruction to render a verdict for it. When the facts bearing upon a controversy are not in dispute, there is presented only a question of law for the court and consequently no question for a jury. So, too, when the undisputed facts are such that from them the law draws a certain inference, there remains no question to be submitted to a jury. Nevertheless, it not infrequently happens that when the plaintiff's case, as well as the defendant's, is predicated upon written documents, there exists a question of fact to be found by a jury. When written documents are submitted, the tenor of which is not certain and which are susceptible of variant meanings, it is admissible to show by oral testimony the circumstances under which the writings were made, as well as the subsequent conduct of the parties thereunder, that the court, standing in the shoes of the parties, may view the subject-matter as did they in making the writings, and may also know the construction which the parties have put upon the writings by them made. The inference to be drawn from such situation and such conduct is ordinarily a question of fact to be determined by a jury. In the present case there was oral evidence tending to show, not only the circumstances under which the writings of the parties were made, but also the construction which they placed upon the instru-

ments they had signed. The cause will therefore be remanded for a new trial. As to this, see Osgood v. Skinner, 186 Ill. 491; Beach on Contracts, Sections 719, 720, 721; Rice v. Illinois Central Railroad Company, 22 Ill. App. 643–649.

As appears from the evidence, appellee has no reason to complain of the settlement made with Hayum. The guaranty was not made upon consideration that one should be obtained from Hayum. He has paid more than one-half of the indebtedness of Isaac Rothschild and is a loser by more than $4,000, while the amount claimed from appellee is less than $2,000.

The judgment of the Circuit Court is reversed and the cause remanded.